# EXHIBIT A

STATE OF NEW MEXICO
COUNTY OF GRANT
SIXTH JUDICIAL DISTRICT

FILED
DISTRICT COURT OF
GRANT COUNTY, N.M.

2021 AUG -9 PM 2:33

DEPUTY

RUBEN J. ESCANO;

       Plaintiff;

v.

SYMMETRY FINANCIAL GROUP OF
NORTH CAROLINA, LLC; and MUTUAL OF
OMAHA INSURANCE COMPANY; and
BRANDON ELLISON; and BRIAN POPE; and
DOES 1 through 10;

       Defendants.

Case No. D-608-CV-2021-229

Judge Stewart

## COMPLAINT FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

       **COMES NOW**, Ruben J. Escano and for his causes of action against the Defendants **STATES** and **ALLEGES**:

### Nature of the Case

       1.    This civil action is brought forth pursuant to the United States Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.* to, inter alia, recover statutory damages for, and enjoin, automatically-dialed and unsolicited telemarketing calls.

### The Parties

       2.    Plaintiff RUBEN J. ESCANO is an individual and resident of Silver City, New Mexico, with a mailing address of 2311 Ranch Club Road, #2-180, Silver City, New Mexico 88061.

3.     Defendant SYMMETRY FINANCIAL GROUP OF NORTH CAROLINA, LLC is a limited liability company organized under the laws of the state of North Carolina, with a principal office address of 204 Whitson Avenue, Swannanoa, North Carolina 28778-3108.  Its registered agent is Casey Watkins at 204 Whitson Avenue, Swannanoa, North Carolina 28778-3108.

4.     Defendant MUTUAL OF OMAHA INSURANCE COMPANY is a for-profit corporation organized under the laws of the State of Nebraska, with a principal address of Mutual of Omaha Plaza, Omaha, Nebraska 68175.  Its registered agent is the Mutual of Omaha Insurance Company c/o General Counsel at Mutual of Omaha Plaza, Omaha, Nebraska 68175.

5.     Defendant BRANDON ELLISON is an individual with an address of 235 Bull Creek Rd, Asheville, North Carolina 28805-8702.  He is a member and manager of Defendant SYMMETRY FINANCIAL GROUP OF NORTH CAROLINA, LLC.

6.     Defendant BRIAN POPE is an individual with an address of 3595 Ridgewood Drive, Loomis, California 95650.  He is a member and manager of Defendant SYMMETRY FINANCIAL GROUP OF NORTH CAROLINA, LLC.

7.     Defendant DOES 1 through 10 are individuals or entities that may be directly or indirectly liable for the causes of action alleged herein.

### Jury Demand

8.     A trial by jury on all claims is hereby requested.

### Jurisdiction

9.     Mr. Escano is a resident of New Mexico and was in New Mexico at the time a substantial number of the communications described herein were received.

10.     The Defendants relied on and availed themselves of the telecommunications infrastructure of New Mexico when transmitting the calls in question.

11.     Defendants offer and market their products or services to residents of New Mexico using means which they know could reach residents of New Mexico.

12.     This state court has jurisdiction over Defendants pursuant to 47 U.S.C. § 227(b)(3) and § 227(c)(5).

## Causes of Action

### Introduction

13.     Beginning on or about February 25, 2019 and continuing to August 3, 2021 or about that date, Defendant MUTUAL OF OMAHA INSURANCE COMPANY (hereinafter, "MOO"); Defendant SYMMETRY FINANCIAL GROUP OF NORTH CAROLINA, LLC (hereinafter, "SFG"); Defendant BRANDON ELLISON; Defendant BRIAN POPE; and Defendant DOES 1 through 10 (hereinafter and collectively, "Defendants"), and/or their agents initiated at least nineteen automatically-dialed and unsolicited telephone calls (hereinafter, "the calls") to Mr. Escano's cellular telephone regarding life and health insurance.  Additionally, Mr. Escano's telephone number is on the Federal Communication Commission's "National Do Not Call" list.

14.     SFG, Mr. Ellison, and Mr. Pope initiated the calls on behalf of, and as agents of, MOO.

15.     Mr. Ellison and Mr. Pope (hereinafter, "the Executives") acted as agents and employees of SFG.

16.     During the calls, SFG attempted to avoid legal reproach by spoofing the phone numbers from which it called so that Mr. Escano's cell phone, and any other telephones called,

would show inaccurate caller ID information, and by instructing its employees not to immediately communicate the true name of the company calling even when Mr. Escano, and any other telephone subscribers that were called, inquired as to the true name of the company.

17.    Twelve of the calls began with an artificial or prerecorded message which initially announced the calls as coming from fictitious entities including, "Senior Solutions" and "Senior Health Advisors."

18.    Seven of the calls did not begin with an artificial or prerecorded message, but rather with a digital beeping sound before Mr. Escano heard a live phone representative come on the line. Six of those calls also contained at least three seconds of silence between the time Mr. Escano answered the call and a live phone representative coming on the line.

19.    The content of all of the calls was substantially similar enough that a reasonable person would identify the communications as coming from the same entity or group of entities. All of the calls were sales calls for life and health insurance.  Additionally, at least one phone representative from each call that Mr. Escano stayed on the line for, asked Mr. Escano for his age, zip code, and full name.

20.    The calls were invasions of Mr. Escano's privacy that required him to divert attention away from his work and personal life to tend to and answer such unwarranted intrusions of his time.

21.    During the calls, Defendants violated at least seven distinct prohibitions, proscribed by the TCPA, at least 101 times, specifically: 47 U.S.C § 227(b)(1)(A)(iii), § 227(b)(1)(B), § 227(b)(1)(D),     47 C.F.R. § 64.1200(a)(7)(i),     § 64.1200(b)(1),     § 64.1200(b)(2),     and § 64.1200(c)(2).

## Relevant Facts

22.     None of the Defendants have an established business relationship with Mr. Escano.

23.     The calls to Mr. Escano were initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services.

24.     Additionally, none of the Defendants have received from Mr. Escano any prior express invitation or permission to call Mr. Escano.

25.     Accordingly, the calls meet the definition of a "telephone solicitation" under 47 U.S.C. § 227(a)(4).

26.     In transmitting the calls to Mr. Escano, Defendants utilized equipment that has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers—or such effectively-similar equipment.

27.     Accordingly, the equipment utilized was an "automatic telephone dialing system" (hereinafter, "ATDS") as defined by 47 U.S.C. § 227(a)(1).

28.     On February 25, 2019, Defendants called Mr. Escano from the phone number 843-217-4095.

29.     On March 7, 2019, Defendants called Mr. Escano from the phone number 704-550-2894.

30.     On April 24, 2019, Defendants called Mr. Escano from the phone number 201-714-7260.

31.     On May 1, 2019, Defendants called Mr. Escano from the phone number 201-549-9043.

32.     On July 10, 2020, Defendants called Mr. Escano from the phone number 802-858-9599.

33.     On July 23, 2020, Defendants called Mr. Escano from the phone number 802-423-1305.

34.     On October 19, 2020, Defendants called Mr. Escano from the phone number 435-546-9454.

35.     On October 20, 2020, Defendants called Mr. Escano from the phone number 435-264-4252.

36.     On November 17, 2020, Defendants called Mr. Escano from the phone number 435-776-6642.

37.     On December 17, 2020, Defendants called Mr. Escano from the phone number 435-260-7022.

38.     On February 2, 2021, Defendants called Mr. Escano from the phone number 435-258-3454.

39.     On February 8, 2021, Defendants called Mr. Escano from the phone number 435-265-4653.

40.     On March 25, 2021, Defendants called Mr. Escano from the phone number 435-214-9013.

41.     On April 8, 2021, Defendants called Mr. Escano from the phone number 262-421-3760.

42.     On July 14, 2021, Defendants called Mr. Escano from the phone number 662-770-5357.

43.     On July 28, 2021, Defendants called Mr. Escano from the phone number 802-436-7634.

44.     On August 2, 2021, Defendants called Mr. Escano from the phone number 802-255-7587.

45.     Again on August 2, 2021, Defendants called Mr. Escano from the phone number 931-709-6437.

46.     On August 3, 2021, Defendants called Mr. Escano from the phone number 980-494-2217.

### SFG's Telemarketing Operation

47.     SFG sells life and health insurance plans.  It sells such plans via telephone and enrolls customers in such plans.

48.     SFG initiated the calls to Mr. Escano.

49.     Accordingly, SFG is directly liable for the calls.

50.     SFG's insurance telemarketing operation consists of at least two components.  The first component is one whereby SFG finds and qualifies potential customers for insurance plans. The second component is one whereby an SFG sales person enrolls such customers in the plans.

51.     The first component of SFG's telemarketing operation includes SFG finding potential customers by calling American telephone subscribers who have never consented to be called by SFG.  During such calls an SFG phone representative asks the telephone subscriber questions to qualify them for specific insurance plans.  Such questions include inquiring as to the telephone subscriber's age and zip code.

52.    In the second component of SFG's telemarketing operation, the call is transferred and immediately connected to an SFG sales person who enrolls the telephone subscriber in an insurance plan.

53.    In a video produced by SFG with the goal of hiring more commissioned sales persons for the company and which is addressed to such potential sales persons, Mr. Ellison addresses such persons and states that Mr. Ellison's "job is to do all of the weeding out to find the people that want your product and put you in front of those people."

54.    In that same video, Mr. Pope addresses potential new sales persons and states, "we [the Executives] are able to provide low-cost leads because we subsidize the leads."

55.    The Executives, or their agents, operated within the first component of SFG's telemarketing operation to make the calls alleged herein to find potential customers, qualify those customers for MOO's insurance plans, and transfer such calls to an SFG sales person who completes the enrollment of insurance on behalf of MOO.

### MOO and SFG, Operating Together

56.    MOO is an insurance company that offers life and health insurance plans.

57.    SFG operated on behalf of MOO and under its direct, implied, or apparent authority.

58.    The calls were transmitted in a manner as alleged in the counts infra, at the direction of MOO.

59.    MOO knew that the volume of insurance enrollments produced by SFG could not be achieved merely by calling customers who had consented to be called by MOO or SFG.

60.    MOO knew that the volume of insurance enrollments produced by SFG could not be achieved merely by calling customers without using an ATDS.

61.     Nonetheless, MOO paid SFG sales commissions for the insurance enrollments produced by SFG.

62.     Accordingly, MOO is vicariously liable for the calls because they were transmitted in a manner as alleged herein with the ratification of MOO.

63.     MOO authorized SFG sales persons to represent themselves as agents of MOO to potential customers.

64.     Additionally, MOO published marketing material which states that SFG sales persons are agents of MOO.

65.     Accordingly, MOO is vicariously liable for the calls under the theory of apparent authority.

66.     MOO controlled SFG throughout and at all times during the counts infra.

67.     MOO manifested assent to its right to control SFG.

68.     Accordingly, MOO is vicariously liable for the calls under the theory of respondeat superior.

**SFG, Operating on Behalf of MOO**

69.     During at least one call, an SFG sales person sent an email to Mr. Escano which contained at least one attachment. At least one of the attachments was a picture of MOO marketing material which was in the possession of the SFG sales person, attached hereto as Exhibit A with the personal information of the sales person redacted.

70.     The MOO marketing material reads, "This is a solicitation of insurance and an insurance agent will contact you by telephone." It also reads, "Licensed insurance agents are

authorized to sell this Medicare supplement insurance policy on behalf of Mutual of Omaha Insurance Company."

71.    The SFG sales person was an agent of MOO who was selling insurance via telephone on behalf of MOO, and she represented herself as such to Mr. Escano.

72.    The marketing material also contains the sales person's full name, contact phone number, and email address (which are redacted in Exhibit A).  The email address has a domain name of "mylifeadvisers.com."  That domain name automatically re-directs to www.sfglife.com, which is SFG's website.

73.    SFG's website has a section called "Our Trusted Partners" which lists Mutual of Omaha Insurance Company as one of SFG's trusted partners.

74.    Additionally, the picture the SFG sales person sent to Mr. Escano shows the sales person's computer screen which shows an email from Mutual of Omaha Insurance Company which says, "Received Thank You Jo Becerra Mutual of Omaha Business."

75.    SFG sales persons communicated regularly with MOO and received directions from MOO.

76.    MOO authorized SFG to sell MOO's insurance plans via telephone on its behalf.

77.    Through its marketing material, MOO represented to Mr. Escano, and others, that SFG sales persons are authorized agents of MOO and that SFG sales persons sell insurance plans on behalf of MOO.

78.    MOO had an agreement with SFG whereby MOO would pay SFG for the customers it enrolled in MOO's insurance plans.  MOO paid SFG accordingly.

79.    The calls were consistent with MOO's directions or statements telling SFG what to do.

### A Scheme for Retroactive "Consent"

80.     During at least one of the calls, an SFG sales person told Mr. Escano that the SFG sales person was "mandated" to not reveal the identity of the insurance company on whose behalf his company was calling until Mr. Escano retroactively consented to be called in a manner that violated the TCPA.

81.     The SFG sales person told Mr. Escano that, "In order for us to proceed with the application, you would have to agree to the TCPA violation."  The sales person stated, "We work directly for the insurance company."

82.     SFG and MOO knew that the calls SFG transmitted to Mr. Escano were transmitted in violation of the TCPA.

83.     MOO had an agreement with SFG whereby MOO mandated that SFG sales persons only reveal the identity of the insurance company on whose behalf SFG was calling—that is, MOO—if the telephone subscriber retroactively agreed to the TCPA violation.

84.     Through this scheme, MOO was able to ensure that only telephone subscribers who retroactively agreed to the calls were enrolled in MOO's insurance plans or found out that MOO was the company on whose behalf the calls were made.  However, the telephone subscribers who did not retroactively agree to the respective call and thus were not enrolled, had nonetheless still been called on behalf of MOO and at the direction of MOO.

85.     Through this scheme, MOO was able to avoid legal reproach.

86.     Neither SFG nor MOO ever received Mr. Escano's prior expressed consent to be called before transmitting any of the calls to him.

87.     Throughout each of the causes of action infra, SFG and the Executives were operating on behalf of, to the benefit of, at the direction of, under control of, and as agents of MOO.

88.     For all counts infra, all preceding paragraphs are incorporated by reference to each of them.

## Counts

### Counts 1 to 19

### Violations of 47 USC § 227(b)(1)(A)(iii): Utilizing an ATDS to transmit a telephone call to a cell phone.

89.     On or about February 25, 2019, MOO, SFG, and the Executives willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone.

90.     On or about March 7, 2019, MOO, SFG, and the Executives willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone.

91.     On or about April 24, 2019, MOO, SFG, and the Executives willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone.

92.     On or about May 1, 2019, MOO, SFG, and the Executives willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone.

93.     On or about July 10, 2020, MOO, SFG, and the Executives willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone.

94.     On or about July 23, 2020, MOO, SFG, and the Executives willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone.

95.    On or about October 19, 2020, MOO, SFG, and the Executives willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone.

96.    On or about October 20, 2020, MOO, SFG, and the Executives willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone.

97.    On or about November 17, 2020, MOO, SFG, and the Executives willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone.

98.    On or about December 17, 2020, MOO, SFG, and the Executives willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone.

99.    On or about February 2, 2021, MOO, SFG, and the Executives willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone.

100.    On or about February 8, 2021 MOO, SFG, and the Executives willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone.

101.    On or about March 25, 2021, MOO, SFG, and the Executives willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone.

102.    On or about April 8, 2021, MOO, SFG, and the Executives willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone.

103.    On or about July 14, 2021, MOO, SFG, and the Executives willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone.

104.    On or about July 28, 2021, MOO, SFG, and the Executives willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone.

105.    On or about August 2, 2021, at or about 10:11 a.m., MOO, SFG, and the Executives willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone.

106.    On or about August 2, 2021, at or about 4:20 p.m., MOO, SFG, and the Executives willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone.

107.    On or about August 3, 2021, MOO, SFG, and the Executives willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone.

## Counts 20 to 32

**Violations of 47 USC § 227(b)(1)(B): Utilizing an artificial or prerecorded voice to deliver a message to a telephone.**

108.    On or about February 25, 2019, MOO, SFG, and the Executives willfully or knowingly utilized an artificial or prerecorded voice at the beginning of a telephone call to Mr. Escano's cell phone.

109.    On or about March 7, 2019, MOO, SFG, and the Executives willfully or knowingly utilized an artificial or prerecorded voice at the beginning of a telephone call to Mr. Escano's cell phone.

110.    On or about April 24, 2019, MOO, SFG, and the Executives willfully or knowingly utilized an artificial or prerecorded voice at the beginning of a telephone call to Mr. Escano's cell phone.

111.    On or about May 1, 2019, MOO, SFG, and the Executives willfully or knowingly utilized an artificial or prerecorded voice at the beginning of a telephone call to Mr. Escano's cell phone.

112.    On or about October 19, 2020, MOO, SFG, and the Executives willfully or knowingly utilized an artificial or prerecorded voice at the beginning of a telephone call to Mr. Escano's cell phone.

113.   On or about October 20, 2020, MOO, SFG, and the Executives willfully or knowingly utilized an artificial or prerecorded voice at the beginning of a telephone call to Mr. Escano's cell phone.

114.   On or about November 17, 2020, MOO, SFG, and the Executives willfully or knowingly utilized an artificial or prerecorded voice at the beginning of a telephone call to Mr. Escano's cell phone.

115.   On or about December 17, 2020, MOO, SFG, and the Executives willfully or knowingly utilized an artificial or prerecorded voice at the beginning of a telephone call to Mr. Escano's cell phone.

116.   On or about February 2, 2021, MOO, SFG, and the Executives willfully or knowingly utilized an artificial or prerecorded voice at the beginning of a telephone call to Mr. Escano's cell phone.

117.   On or about March 7, 2019, MOO, SFG, and the Executives willfully or knowingly utilized an artificial or prerecorded voice at the beginning of a telephone call to Mr. Escano's cell phone.

118.   On or about March 25, 2021, MOO, SFG, and the Executives willfully or knowingly utilized an artificial or prerecorded voice at the beginning of a telephone call to Mr. Escano's cell phone.

119.   On or about April 8, 2021, MOO, SFG, and the Executives willfully or knowingly utilized an artificial or prerecorded voice at the beginning of a telephone call to Mr. Escano's cell phone.

120.    On or about July 14, 2021, MOO, SFG, and the Executives willfully or knowingly utilized an artificial or prerecorded voice at the beginning of a telephone call to Mr. Escano's cell phone.

### Counts 33 to 51

### Violations of 47 USC § 227(b)(1)(D): Using an ATDS in such a way that two or more telephone lines of a multi-line business are engaged simultaneously.

121.    On or about February 25, 2019, MOO, SFG, and the Executives willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone in such a way that two or more telephone lines of a multi-line business were engaged simultaneously.

122.    On or about March 7, 2019, MOO, SFG, and the Executives willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone in such a way that two or more telephone lines of a multi-line business were engaged simultaneously.

123.    On or about April 24, 2019, MOO, SFG, and the Executives willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone in such a way that two or more telephone lines of a multi-line business were engaged simultaneously.

124.    On or about May 1, 2019, MOO, SFG, and the Executives willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone in such a way that two or more telephone lines of a multi-line business were engaged simultaneously.

125.    On or about July 10, 2020, MOO, SFG, and the Executives willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone in such a way that two or more telephone lines of a multi-line business were engaged simultaneously.

126. On or about July 23, 2020, MOO, SFG, and the Executives willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone in such a way that two or more telephone lines of a multi-line business were engaged simultaneously.

127. On or about October 19, 2020, MOO, SFG, and the Executives willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone in such a way that two or more telephone lines of a multi-line business were engaged simultaneously.

128. On or about October 20, 2020, MOO, SFG, and the Executives willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone in such a way that two or more telephone lines of a multi-line business were engaged simultaneously.

129. On or about November 17, 2020, MOO, SFG, and the Executives willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone in such a way that two or more telephone lines of a multi-line business were engaged simultaneously.

130. On or about December 17, 2020, MOO, SFG, and the Executives willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone in such a way that two or more telephone lines of a multi-line business were engaged simultaneously.

131. On or about February 2, 2021, MOO, SFG, and the Executives willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone in such a way that two or more telephone lines of a multi-line business were engaged simultaneously.

132. On or about February 8, 2021, MOO, SFG, and the Executives willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone in such a way that two or more telephone lines of a multi-line business were engaged simultaneously.

133.    On or about March 25, 2021, MOO, SFG, and the Executives willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone in such a way that two or more telephone lines of a multi-line business were engaged simultaneously.

134.    On or about April 8, 2021, MOO, SFG, and the Executives willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone in such a way that two or more telephone lines of a multi-line business were engaged simultaneously.

135.    On or about July 14, 2021, MOO, SFG, and the Executives willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone in such a way that two or more telephone lines of a multi-line business were engaged simultaneously.

136.    On or about July 28, 2021, MOO, SFG, and the Executives willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone in such a way that two or more telephone lines of a multi-line business were engaged simultaneously.

137.    On or about August 2, 2021, at or about 10:11 a.m., MOO, SFG, and the Executives willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone in such a way that two or more telephone lines of a multi-line business were engaged simultaneously.

138.    On or about August 2, 2021, at or about 4:20 p.m., MOO, SFG, and the Executives willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone in such a way that two or more telephone lines of a multi-line business were engaged simultaneously.

139.    On or about August 3, 2021, MOO, SFG, and the Executives willfully or knowingly utilized an ATDS to transmit a telephone call to Mr. Escano's cell phone in such a way that two or more telephone lines of a multi-line business were engaged simultaneously.

**Counts 52 to 59**

**Violations of 47 CFR § 64.1200(a)(7)(i): Allowing a more than two-second delay before responding to answered call.**

140.    On or about July 23, 2020, MOO, SFG, and the Executives willfully or knowingly transmitted a telephone call to Mr. Escano's cell phone in such manner that allowed more than a two-second delay between Mr. Escano answering the call and a live phone representative coming on the line.

141.    On or about October 19, 2020, MOO, SFG, and the Executives willfully or knowingly transmitted a telephone call to Mr. Escano's cell phone in such manner that allowed more than a two-second delay between Mr. Escano answering the call and a live phone representative coming on the line.

142.    On or about December 17, 2020, MOO, SFG, and the Executives willfully or knowingly transmitted a telephone call to Mr. Escano's cell phone in such manner that allowed more than a two-second delay between Mr. Escano answering the call and a live phone representative coming on the line.

143.    On or about February 8, 2021, MOO, SFG, and the Executives willfully or knowingly transmitted a telephone call to Mr. Escano's cell phone in such manner that allowed more than a two-second delay between Mr. Escano answering the call and a live phone representative coming on the line.

144.    On or about July 28, 2021, MOO, SFG, and the Executives willfully or knowingly transmitted a telephone call to Mr. Escano's cell phone in such manner that allowed more than a

two-second delay between Mr. Escano answering the call and a live phone representative coming on the line.

145.    On or about August 2, 2021, at or about 10:11 a.m., MOO, SFG, and the Executives willfully or knowingly transmitted a telephone call to Mr. Escano's cell phone in such manner that allowed more than a two-second delay between Mr. Escano answering the call and a live phone representative coming on the line.

146.    On or about August 2, 2021, at or about 4:20 p.m., MOO, SFG, and the Executives willfully or knowingly transmitted a telephone call to Mr. Escano's cell phone in such manner that allowed more than a two-second delay between Mr. Escano answering the call and a live phone representative coming on the line.

147.    On or about August 3, 2021, MOO, SFG, and the Executives willfully or knowingly transmitted a telephone call to Mr. Escano's cell phone in such manner that allowed more than a two-second delay between Mr. Escano answering the call and a live phone representative coming on the line.

## Counts 60 to 70

### Violations of 47 CFR § 64.1200(b)(1): Transmitting a telephone call with an artificial or prerecorded message which does not state the identity of the business calling.

148.    On or about February 25, 2019, MOO, SFG, and the Executives willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state the identity of the business calling.

149.     On or about March 7, 2019, MOO, SFG, and the Executives willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state the identity of the business calling.

150.     On or about April 24, 2019, MOO, SFG, and the Executives willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state the identity of the business calling.

151.     On or about May 1, 2019, MOO, SFG, and the Executives willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state the identity of the business calling.

152.     On or about October 19, 2020, MOO, SFG, and the Executives willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state the identity of the business calling.

153.     On or about October 20, 2020, MOO, SFG, and the Executives willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state the identity of the business calling.

154.     On or about December 17, 2020, MOO, SFG, and the Executives willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state the identity of the business calling.

155.     On or about February 2, 2021, MOO, SFG, and the Executives willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state the identity of the business calling.

156.    On or about March 25, 2021, MOO, SFG, and the Executives willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state the identity of the business calling.

157.    On or about April 8, 2021, MOO, SFG, and the Executives willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state the identity of the business calling.

158.    On or about July 14, 2021, MOO, SFG, and the Executives willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state the identity of the business calling.

### Counts 71 to 82

**Violations of 47 CFR § 64.1200(b)(2): Transmitting a telephone call with an artificial or prerecorded message which does not state the telephone number of the business calling.**

159.    On or about February 25, 2019, MOO, SFG, and the Executives willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state a telephone number for the business calling.

160.    On or about March 7, 2019, MOO, SFG, and the Executives willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state a telephone number for the business calling.

161.    On or about April 24, 2019, MOO, SFG, and the Executives willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state a telephone number for the business calling.

162.    On or about May 1, 2019, MOO, SFG, and the Executives willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state a telephone number for the business calling.

163.    On or about October 19, 2020, MOO, SFG, and the Executives willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state a telephone number for the business calling.

164.    On or about October 20, 2020, MOO, SFG, and the Executives willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state a telephone number for the business calling.

165.    On or about November 17, 2020, MOO, SFG, and the Executives willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state a telephone number for the business calling.

166.    On or about December 17, 2020, MOO, SFG, and the Executives willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state a telephone number for the business calling.

167.    On or about February 2, 2021, MOO, SFG, and the Executives willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state a telephone number for the business calling.

168.    On or about March 25, 2021, MOO, SFG, and the Executives willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state a telephone number for the business calling.

169.   On or about April 8, 2021, MOO, SFG, and the Executives willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state a telephone number for the business calling.

170.   On or about July 14, 2021, MOO, SFG, and the Executives willfully or knowingly utilized an artificial or prerecorded message at the beginning of a telephone call, to Mr. Escano's cell phone, which did not state a telephone number for the business calling.

## Counts 83 to 101

## Violations of 47 CFR § 64.1200(c)(2): Calling a telephone number on the national do-not-call registry.

171.   On or about February 25, 2019, MOO, SFG, and the Executives willfully or knowingly transmitted a telephone call to Mr. Escano's phone number which is registered on the national do-not-call registry.

172.   On or about March 7, 2019, MOO, SFG, and the Executives willfully or knowingly transmitted a telephone call to Mr. Escano's phone number which is registered on the national do-not-call registry.

173.   On or about April 24, 2019, MOO, SFG, and the Executives willfully or knowingly transmitted a telephone call to Mr. Escano's phone number which is registered on the national do-not-call registry.

174.   On or about May 1, 2019, MOO, SFG, and the Executives willfully or knowingly transmitted a telephone call to Mr. Escano's phone number which is registered on the national do-not-call registry.

175.    On or about July 10, 2020, MOO, SFG, and the Executives willfully or knowingly transmitted a telephone call to Mr. Escano's phone number which is registered on the national do-not-call registry.

176.    On or about July 23, 2020, MOO, SFG, and the Executives willfully or knowingly transmitted a telephone call to Mr. Escano's phone number which is registered on the national do-not-call registry.

177.    On or about October 19, 2020, MOO, SFG, and the Executives willfully or knowingly transmitted a telephone call to Mr. Escano's phone number which is registered on the national do-not-call registry.

178.    On or about October 20, 2020, MOO, SFG, and the Executives willfully or knowingly transmitted a telephone call to Mr. Escano's phone number which is registered on the national do-not-call registry.

179.    On or about November 17, 2020, MOO, SFG, and the Executives willfully or knowingly transmitted a telephone call to Mr. Escano's phone number which is registered on the national do-not-call registry.

180.    On or about December 17, 2020, MOO, SFG, and the Executives willfully or knowingly transmitted a telephone call to Mr. Escano's phone number which is registered on the national do-not-call registry.

181.    On or about February 2, 2021, MOO, SFG, and the Executives willfully or knowingly transmitted a telephone call to Mr. Escano's phone number which is registered on the national do-not-call registry.

182.   On or about February 8, 2021, MOO, SFG, and the Executives willfully or knowingly transmitted a telephone call to Mr. Escano's phone number which is registered on the national do-not-call registry.

183.   On or about March 25, 2021, MOO, SFG, and the Executives willfully or knowingly transmitted a telephone call to Mr. Escano's phone number which is registered on the national do-not-call registry.

184.   On or about April 8, 2021, MOO, SFG, and the Executives willfully or knowingly transmitted a telephone call to Mr. Escano's phone number which is registered on the national do-not-call registry.

185.   On or about July 14, 2021, MOO, SFG, and the Executives willfully or knowingly transmitted a telephone call to Mr. Escano's phone number which is registered on the national do-not-call registry.

186.   On or about July 28, 2021, MOO, SFG, and the Executives willfully or knowingly transmitted a telephone call to Mr. Escano's phone number which is registered on the national do-not-call registry.

187.   On or about August 2, 2021, at or about 10:11 a.m., MOO, SFG, and the Executives willfully or knowingly transmitted a telephone call to Mr. Escano's phone number which is registered on the national do-not-call registry.

188.   On or about August 2, 2021, at or about 4:20 p.m., MOO, SFG, and the Executives willfully or knowingly transmitted a telephone call to Mr. Escano's phone number which is registered on the national do-not-call registry.

189.   On or about August 3, 2021, MOO, SFG, and the Executives willfully or knowingly transmitted a telephone call to Mr. Escano's phone number which is registered on the national do-not-call registry.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

A.  pursuant to 47 U.S.C. § 227(b)(3)(B) and § 227(c)(5)(B), for each of the at least 101 violations of the TCPA committed by Defendants;

B.  pursuant to 47 U.S.C. § 227(b)(3) and § 227(c)(5), trebling the damages for each of the willful or knowing violations;

C.  for punitive damages sufficient to punish Defendants for their attempts to avoid legal reproach;

D.  pursuant to 47 U.S.C. § 227(b)(3)(A) and § 227(c)(5)(A), for an injunction ordering Defendants to cease their telemarketing calls to Plaintiff;

E.  for Plaintiff's attorney's fees and costs;

F.  for pre and post-judgment interest;

G.  and for all other relief to which Plaintiff is entitled under New Mexico law.

Dated at Silver City, New Mexico this 9th day of August, 2021.

Respectfully Submitted,

By: _____

**Ruben J. Escano**, *Pro Se*

2311 Ranch Club Road
Mailbox #2-180
Silver City, NM 88061
(201) 527-8938

# EXHIBIT A

